# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA *ex rel.*
BENJAMIN MARTINEZ, JR., CONNIE
MORGAN, and CHRISTOPHER NEGRETE;

STATE OF ALASKA *ex rel.* BENJAMIN
MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

STATE OF CALIFORNIA *ex rel.* BENJAMIN
MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

STATE OF COLORADO *ex rel.* BENJAMIN
MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

STATE OF CONNECTICUT *ex rel.*
BENJAMIN MARTINEZ, JR., CONNIE
MORGAN, and CHRISTOPHER NEGRETE;

DISTRICT OF COLUMBIA *ex rel.*
BENJAMIN MARTINEZ, JR., CONNIE
MORGAN, and CHRISTOPHER NEGRETE;

STATE OF DELAWARE *ex rel.* BENJAMIN
MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

STATE OF FLORIDA *ex rel.* BENJAMIN
MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

STATE OF GEORGIA *ex rel.* BENJAMIN
MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

STATE OF HAWAII *ex rel.* BENJAMIN
MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

STATE OF ILLINOIS *ex rel.* BENJAMIN
MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

**CORRECTED SECOND AMENDED
COMPLAINT**

**CIVIL ACTION No: 17-CV-1059**

**FILED UNDER SEAL
PURSUANT TO
31 U.S.C. § 3730(b)**

**JURY TRIAL REQUESTED**

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

STATE OF INDIANA *ex rel.* BENJAMIN
MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

STATE OF IOWA *ex rel.* BENJAMIN
MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

STATE OF LOUISIANA *ex rel.* BENJAMIN
MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

STATE OF MARYLAND *ex rel.* BENJAMIN
MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

STATE OF MASSACHUSETTS *ex rel.*
BENJAMIN MARTINEZ, JR., CONNIE
MORGAN, and CHRISTOPHER NEGRETE;

STATE OF MICHIGAN *ex rel.* BENJAMIN
MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

STATE OF MINNESOTA *ex rel.* BENJAMIN
MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

STATE OF MONTANA *ex rel.* BENJAMIN
MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

STATE OF NEVADA *ex rel.* BENJAMIN
MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

STATE OF NEW JERSEY *ex rel.* BENJAMIN
MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

STATE OF NEW MEXICO *ex rel.* BENJAMIN
MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

STATE OF NEW YORK *ex rel.* BENJAMIN

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

STATE OF NORTH CAROLINA *ex rel.*
BENJAMIN MARTINEZ, JR., CONNIE
MORGAN, and CHRISTOPHER NEGRETE;

STATE OF OKLAHOMA *ex rel.* BENJAMIN
MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

STATE OF RHODE ISLAND *ex rel.*
BENJAMIN MARTINEZ, JR., CONNIE
MORGAN, and CHRISTOPHER NEGRETE;

STATE OF TENNESSEE *ex rel.* BENJAMIN
MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

STATE OF TEXAS *ex rel.* BENJAMIN
MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

STATE OF VERMONT *ex rel.* BENJAMIN
MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

STATE OF VIRGINIA *ex rel.* BENJAMIN
MARTINEZ, JR., CONNIE MORGAN, and
CHRISTOPHER NEGRETE;

STATE OF WASHINGTON *ex rel.*
BENJAMIN MARTINEZ, JR., CONNIE
MORGAN, and CHRISTOPHER NEGRETE;

                    Plaintiffs,
        v.

APRIA HEALTHCARE GROUP, INC., and
APRIA HEALTHCARE LLC,

                    Defendants.

**CORRECTED SECOND AMENDED COMPLAINT**
**(False Claims Act)**

3

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

    1.      This is a False Claims Act case.  Defendants Apria Healthcare Group, Inc. and Apria Healthcare LLC (together, "Apria") knowingly bill Medicare and Medicaid for expensive Non-Invasive Ventilators ("NIVs") that are not actually used by Apria's patients.  Because the ventilators are not actually used, government payment guidelines forbid reimbursement for the NIVs, and Apria knows it.  Apria's claims for reimbursement are false and Apria knows them to be false.

## JURISDICTION AND VENUE

    2.      All Counts of this Complaint are civil actions by Relators, acting on behalf of and in the name of the United States and the state plaintiffs, against Apria under the federal False Claims Act, 31 U.S.C. §§ 3729-3733, and analogous state false claims laws.

    3.      This Court has jurisdiction over the claims brought on behalf of the United States pursuant to 28 U.S.C. §§ 1331 and 1345, and 31 U.S.C. § 3732(a).

    4.      This Court has jurisdiction over the state law claims alleged herein under 31 U.S.C. § 3732(b). In addition, the Court has supplemental jurisdiction over the claims brought on behalf of the state plaintiffs under 28 U.S.C. § 1367.

    5.      The False Claims Act provides that an action under 31 U.S.C. § 3730 may be brought "in any judicial district in which . . . any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." 31 U.S.C. § 3732(a). The Defendants all transact business in this judicial district by, among other things, shipping NIVs to customers residing in this judicial district. Moreover, Apria owns and operates a branch office in Elmsford, NY.  Accordingly, this Court has personal jurisdiction over the Defendants, and venue is appropriate in this district.  31 U.S.C. § 3732(a). Venue is also proper under 28 U.S.C. § 1391.

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

6.     None of the allegations set forth in this Complaint is based on a public disclosure of allegations or transactions in a criminal, civil or administrative hearing, in a congressional, administrative or General Accounting Office report, hearing, audit or investigation, or from the news media. Relators have direct and independent knowledge of the information on which the allegations set forth in this Complaint are based. Moreover, prior to filing this lawsuit and prior to any public disclosures regarding this matter, Relators voluntarily provided the information set forth herein to agents of the United States Department of Justice and to the Attorneys General of the state plaintiffs.

7.     None of the allegations or transactions set forth in this Complaint is substantially the same as allegations or transactions that have been publicly disclosed in a Federal criminal, civil or administrative hearing in which the Government or its agent is a party, or in a congressional, administrative or Government Accountability Office, or other Federal report, hearing, audit or investigation, or from the news media.

## **THE PARTIES**

### *Relators*

8.     Relator Benjamin Martinez was employed by Apria as a Respiratory Therapist from approximately 1997 until 2016, at Apria's Riverside, CA branch office.  Relator Connie Morgan has been employed by Apria, since early 2015, as a Respiratory Therapist in Apria's St. Peters, MO branch office.  Relator Christopher Negrete was employed by Apria as a Respiratory Therapist from approximately 2002 to 2015, in Apria's Riverside, CA branch office.  The Relators, combined, have over 50 years' experience as Respiratory Therapists, of which more than 35 years were spent working for Apria.

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

9.      During their tenure at Apria, all three Relators spoke up about the Apria practices described in this Complaint.

10.     Relator Ben Martinez raised concerns with patients being inappropriately switched to NIV machines and being kept on those machines even though non-compliant.  He spoke about this with Apria's Corporate Vice-President of compliance.  Relator Martinez also brought these concerns to his regional "compliance manager."  Soon afterward, Martinez was terminated in a so-called "force reduction."  Martinez is bringing a claim for retaliation, set forth below.

11.     Relator Chris Negrete also raised concerns about patients being inappropriately switched to NIV machines and being kept on those machines even though non-compliant.  He spoke about this to his office branch manager and his regional manager of sales, prior to his termination.  He also informed Apria's Corporate Vice-President of compliance of his concerns that many Apria patients were non-compliant with their NIV treatment.   Negrete is bringing a claim for retaliation, set forth below.

12.     Relator Connie Morgan informed her Human Resources contact about a colleague falsifying doctors' work orders.  That colleague has since left the company, but the culture of sales pressure remains.

### *Plaintiff United States Of America*

13.     Relators bring this action on behalf of the United States pursuant to the qui tam provisions of the federal False Claims Act, 31 U.S.C. § 3729 *et seq.*

14.     On behalf of the United States, Relators seek recovery for damages to federally-funded health insurance programs, including, but not limited to, the federal-state Medicaid drug benefit program, established under Title XIX of the Social Security Act, 42 U.S.C. §1396 *et seq.,*

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

and state laws; the Medicare Part B program; the Federal Employees Health Benefits Plan ("FEHBP"), established under Chapter 89 of Title 5 of the U.S. Code, 5 U.S.C. §§ 8901 through 8914; and the U.S. Department of Defense TRICARE and CHAMPUS health care programs, established pursuant to 10 U.S.C. § 1071 *et seq.*

15.    The Centers for Medicare and Medicaid Services ("CMS") of the U.S. Department of Health & Human Services ("HHS") funds and oversees the joint federal-state funded Medicaid Program for the financially needy. The state plaintiffs participate in the Medicaid program, under which they pay for durable medical equipment (DME) in certain circumstances and for certain indigent individuals who are beneficiaries of such programs. Reimbursement for DME covered by a state Medicaid program is made by each state's Medicaid program agency, which, in turn, seeks reimbursement for a portion of its expenditures from the federal government.

16.    CMS funds and oversees the Medicare Part B program, which covers a portion of durable medical equipment (DME) for eligible individuals.  CMS funds and oversees this program through contracts with Durable Medical Equipment Administrative Contractors ("DMACs").  The DMACs administer the Medicare Durable Medical Equipment for Medicare Part B.  The DMACs evaluate and process claims for payment from suppliers like Apria, and issue the payments.  (The DMACs are then separately reimbursed by CMS.)  The DMACs have authority to conduct audits and issue binding guidance regarding what documentation is required in order to submit a claim for reimbursement.  Some of the DMACs' guidance is in the form of Local Coverage Determinations ("LCDs").  Making a false claim to a DMAC is equivalent, for purposes of the FCA, to making the false statement directly to CMS.

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

17.    The U.S. Office of Personnel Management ("OPM") funds and oversees the FEHBP, which covers a portion of DME expenditures incurred by federal government employees, retirees, and their families.

18.    The U.S. Department of Defense ("DOD") funds and oversees the CHAMPUS and TRICARE programs, which cover a portion of DME expenditures incurred by civilian DOD employees, retirees, and their families.

### *State Plaintiffs*

19.    Relators bring this action on behalf of the states of California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Hawaii, Illinois, Indiana, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, and Virginia ("the state plaintiffs").   Relators bring this action under the *qui tam* provisions of the following false claims laws of the state plaintiffs: Alaska Stat. Ann. § 09.58.010 *et seq.*; California False Claims Law, Cal. Gov. Code § 12650 *et seq.*; California Insurance Frauds Prevention Act, Cal. Ins. Code § 1871 *et seq.*; Colorado Medicaid False Claims Act, Col. Rev. Stat. 25.5-4-303.5 through 25.5-4-310; Connecticut Gen. Stat. § 4-274 *et seq*; the District of Columbia's False Claims Act, D.C. CODE §§ 2-381.01 *et seq.*; the Delaware False Claims and Reporting Act, 6 Del. C. § 1201 *et seq.*; Florida False Claims Act, Fla. Stat. §§ 68.081-68.09; Georgia State False Medicaid Claims Act, Ga. Code Ann. § 49-4-168, *et seq.*; Hawaii False Claims Law, HRS § 661-21 *et seq.*; Illinois Whistleblower Reward & Protection Act, 740 ILCS 175/1 *et seq.*; Illinois Insurance Claims Fraud Prevention Act, 740 ILCS 92/1 *et seq.*; Indiana False Claims & Whistleblower Protection Law, Ind. Code § 5-11-5.5.-1 *et seq.*; Iowa False Claims Act, Iowa Code § 685.1 *et seq.*; Louisiana Qui Tam Action Act, La. R.S.

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

46:438.1 *et seq.*; Maryland False Health Claims Act, Md. Code Ann. Health-Gen. § 2-601 *et seq.*; Massachusetts False Claims Law, Mass. Gen. Laws Ann. ch. 12, § 5A, *et seq.*; Michigan Medicaid False Claims Act, Mich. Comp. Laws Ann. § 400.601, *et seq.*; Minnesota False Claims Act, Minn.Stat. § 15C.01 *et seq.*; Montana False Claims Act, Mont. Code Ann. § 17-8-401 *et seq.*; Nevada Submission of False Claims to State or Local Government Act, Nev. Rev. Stat. Ann. § 357.010 *et seq.*; the New Jersey False Claims Act, N.J. Stat. Ann. § 2A:32C-1; New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-1 *et seq.*; New York False Claims Act, N.Y. State Fin. Law § 187 *et seq.*; North Carolina False Claims Act, N.C. Gen. Stat. Ann. § 1-605 *et seq.*; Oklahoma Medicaid False Claims Act, Okla. Stat. Ann. tit. 63, § 5053.1 *et seq.*; Rhode Island False Claims Act, R.I. Gen. Laws Ann. § 9-1.1-1 *et seq.*; Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq.*; Texas False Claims Act, Tex. Hum. Res. Code Ann. § 36.001 *et seq.*; Vermont False Claims Act, Vt. Stat. Ann. tit. 32, § 630 *et seq.*; Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1 *et seq.*; and the Washington Health Care False Claim Act, Wash. Rev. Code Ann. § 48.80.010 *et seq.*.  On behalf of the state plaintiffs, Relators seek recovery for damages caused by the submission of false claims to state-funded health insurance programs, including but not limited to: i) the federal-state Medicaid programs that are jointly funded by the United States and the state plaintiffs; and ii) other state health insurance programs that cover some or all of the costs of durable medical equipment (DME).  Under the California Insurance Frauds Prevent Act and Illinois Insurance Claims Fraud Prevention Act, Relators seek recovery for damages caused by the submission of false claims to private insurers.

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

### *Defendant Apria*

20.     Apria is one of the nation's largest providers of home respiratory services and certain durable medical equipment (DME), including oxygen therapy, inhalation therapies, and sleep apnea treatment.  Through its Apria Healthcare LLC operating unit, Apria operates more than 325 locations throughout the United States and serves more than 1.8 million patients each year.  According to Apria's press releases, the company is privately held.  Its owners are a group of investment limited partnerships managed by affiliates of Blackstone (NYSE: BX).

21.     Apria sells and rents ventilation machines, which are prescribed to patients for a variety of breathing-related diseases and disorders, including but not limited to sleep apnea, chronic obstructive pulmonary disease (COPD), and neurological and neuromuscular disorders, among others.  Apria employs salespeople, who market Apria's products to doctors.  Apria also employs Respiratory Therapists, whose regular job is to train and guide patients on how to use the equipment sold or rented by Apria.  As discussed further below in this complaint, Apria's fraudulent scheme has diverted Respiratory Therapists to serve as another part of Apria's sales force for NIV machines.

### **BACKGROUND ON NIV THERAPY**

22.     Broadly speaking, there are four major types of machines that assist patients with breathing.  In increasing order of complexity and cost, they are:

(1) Oxygen-only masks and nose pieces (for example, cannulas that connect to an oxygen tank, and provide oxygen-rich air directly to the patient, but that do not assist with breathing);

(2) Continuous Positive Airway Pressure ("CPAP") machines, that (with or without oxygen) deliver a constant pressure of air through a mask to the patient;

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

(3) Bi-lateral Positive Airway Pressure ("BiPAP") machines, that (with or without oxygen) deliver two different pressures of air through a mask to the patient. Typically, the machine senses when a patient is inhaling or exhaling, and switches pressures according to the patient's breaths; and

(4) Non-Invasive Ventilation ("NIV") machines, that (with or without oxygen) deliver pressurized air to the patient. NIV machines are unlike BiPAP and CPAP machines because they "breathe for" the patient, while CPAP and BiPAP simply deliver one (or two) constant pressures.

23.      NIV machines are much more expensive than simpler CPAP and BiPAP ventilators. NIV costs approximately $3,775/month for renting one machine. By comparison, simpler machines rent for $90/month (CPAP) and $208/month (BiPAP), or may be purchased for approximately $797 (CPAP) or approximately $1,726 (BiPAP).

24.      Another difference between NIV and the simpler CPAP and BiPAP machines is that CMS requires a sleep study be performed, prior to approving reimbursement for CPAP and BiPAP machines. That requirement (for a sleep study) does not apply to NIV machines. A sleep study costs time and effort. Among other things, conducting a sleep study requires the patient to travel to a sleep study center for overnight observation, and often to pay for some or all of the service. The lack of a sleep study requirement made it easier for Apria to convince doctors to prescribe NIV machines to their patients.

25.      The CMS Office of the Inspector General ("OIG") has identified one NIV billing code—E0464—as being associated with a spike in payments over the last three years.[1] In a

---

[1] As of January 1, 2016, E0464 was discontinued. NIV machines previously billed to that code were assigned to new billing code E0466.

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

September 2015 advisory, OIG asked:   What caused this spike?   *See* HHS OIG Data Brief,

Escalating Medicare Billing for Ventilators Raises Concerns, OEI-12-15-00370 (Sep. 2016).

These relators have the answer to OIG's question:   At least at Apria, fraud explains the increase

in payments for this expensive billing code.

## STATUTORY AND REGULATORY BACKGROUND

### *The False Claims Act*

26.     The federal False Claims Act provides:

> [A]ny person who—
>
> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; …
>
> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to to pay or transmit money or property to the Government,
>
> is liable to the United States Government . . . .

31 U.S.C. § 3729 (a)(1).

27.     Federal law and regulations require that Apria, in order to be reimbursed under

Medicare, Medicaid, FEHBP, TRICARE or CHAMPUS, must ensure that its items and services

are provided "only when, and to the extent, medically necessary."   42 U.S.C. § 1320c-5(a); 42

C.F.R. § 1004.10.

28.     Apria was and is required to submit claims for reimbursement using the CMS-

1500 form (for any claims submitted by paper to CMS) or the 837 form (for claims submitted

electronically).   The current version of the CMS-1500 form has been in use since at least

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

February 1, 2012.  By signing the form, or using its electronic equivalent, Apria certified that the

NIV ventilators it provided were "medically necessary."

29.    Medicare, Medicaid, FEHBP, TRICARE and CHAMPUS distinguish between

NIV therapy and other, less expensive respiratory assistance devices ("RADs"), particularly

CPAP and BiPAP machines.  Specifically, in order to qualify for the more expensive machine, a

patient's condition must be so "severe and life-threatening" that "interruption or failure of

respiratory support leads to death."

30.    Apria knew about this condition of payment.  For example, in Apria's own

"Medicare Screening List" (which it describes as a "reference tool for healthcare professionals")

Apria describes the "life-threatening" condition requirement, just quoted, as a "CMS regulation,"

and goes on to state that "[c]laims for ventilators used for the treatment of conditions described

in the RAD LCD [i.e., are not life-threatening] will be denied as not reasonable and necessary."

31.    Medicare, Medicaid, FEHBP, TRICARE and CHAMPUS also require that

patients be "compliant" with NIV therapy.  This is a condition of payment—these government

programs will not reimburse the cost of NIV for non-compliant patients.

32.    Apria knew that no reimbursement was permitted for non-compliant patients.  For

example, in Apria's Medicare Screening List, Apria states: "There must be documentation in the

patient's medical record about the progress of relevant symptoms and patient usage of the device

up to that time.  Failure of the patient to be consistently using the . . . device for an average of 4

hours per 24 hour period by the time of the re-evaluation (on or after 61 days after initiation of

therapy) would represent non-compliant utilization for the intended purposes and expectations of

benefit of this therapy."

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

### *The Anti-Kickback Statute*

33.     The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), prohibits any person or entity from making or accepting payment to induce or reward any person for referring, recommending, or arranging for federally funded medical services, including services provided under the Medicare and Medicaid programs.  In relevant part, 42 U.S.C. § 1320a-7b(b) provides:

> (2) Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—
>
> > (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
> >
> > (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,
>
> shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

34.     The CMS-1500 form requires Apria to certify that each "claim . . . complies with all applicable laws . . . including but not limited to the Federal anti-kickback statute."

35.     Compliance with the Anti-Kickback Statute is a condition of payment by federal programs such as Medicare, Medicaid, FEHBP, TRICARE or CHAMPUS.  Violation of the statute can subject the perpetrator to exclusion from participation in federal health care programs and to civil monetary penalties.  42 U.S.C. § 1320a-7a(a); § 1320a-7b(g).  Violations of the Anti-Kickback Statute can also form the basis for a claim under the False Claims Act.  42 U.S.C. § 1320a-7b(g).

36.     Routine waiver of patient coinsurance is a violation of the Anti-Kickback Statute.  The Civil Monetary Penalties Law, a companion to the Anti-Kickback Statute, explicitly defines "remuneration" to include "the waiver of coinsurance."  42 U.S.C. § 1320a-7a(i)(6).  The Anti-

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

Kickback Statute itself excludes from liability two specific types of coinsurance waivers: (1) "waiver of any coinsurance . . . by a Federally qualified health center with respect to an individual who qualifies for subsidized services under a provision of the Public Health Service Act," 42 U.S.C. § 1320a-7b(b)(3)(D); and (2) "waiver or reduction by pharmacies . . . of any cost-sharing imposed under part D of this subchapter XVIII of this chapter," 42 U.S.C. § 1320a-7b(b)(3)(G). Neither type of exclusion applies here. Regulations promulgated by CMS further define the specific safe harbors from the Anti-Kickback Statute related to coinsurance waivers, *see* 42 C.F.R. § 1001.952(k), excluding from these safe harbors any other "routine reduction or waiver of any coinsurance or deductible amount owed by a program beneficiary," 42 C.F.R. § 1001.952(h)(5)(iv). Finally, the OIG has long held that any exception to the Anti-Kickback Statute's "prohibition against waiving copayments" based on "financial hardship" "must not be used routinely" and may only be used "occasionally to address the special financial needs of a particular patient." 59 Fed. Reg. 65,231, 65,375 (1994).

## THE FRAUDULENT SCHEME

### *Overview*

37.    Beginning in or about January 2011 and continuing through the current time, Apria has employed a scheme to increase sales and rentals of NIV machines.

38.    Apria created a "boiler room" sales culture that prioritized NIV sales over patient care and honest billing. Apria directed its Respiratory Therapists (whose regular job is to visit patients in their homes to assist with their therapy) to "mine" Apria's data records. "Mining" meant searching for patient records showing a diagnosis of chronic obstructive pulmonary disease ("COPD") or some other similar diagnoses. These specific diagnoses were desirable to Apria because they can (in extreme, life-threatening cases) justify CMS payments for NIV.

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

39.   The "mining" program is now called the "Apria Clinical Evidence" (ACE) program.  An internal ACE training PowerPoint, obtained by relators and dated in 2016, states: "In order to significantly grow the company's NIV business, Apria needs each market and branch to leverage the ACE program.  Target 25% starts growth pre vs post-ACE rollout."

40.   Many of Apria's "mined" COPD patients were already receiving a simpler (and cheaper) form of therapy—typically oxygen (administered through a nasal cannula during the day) and CPAP or BiPAP (usually at night).

41.   Respiratory Therapists were instructed to "reach out" to the "mined" patients by phone, and to follow scripts, during their phone calls, to determine if the patients met the criteria for NIV therapy.

42.   Apria salespeople used the information gathered by the Respiratory Therapists, in the "mining" process, to convince the patients' doctors to sign work orders for NIV therapy. Many of these doctors were general practitioners without expertise in the differences between types of ventilators.

43.   Once the doctor's work order had been obtained, Apria refused to help patients return to simpler therapy or even to return the equipment.  Instead, Apria would attempt to "re-educate" patients on the NIV machines.   The Relators were instructed to tell patients that returning to their old therapy would cause them severe harm and require a tracheotomy.

44.   Apria pitted its branch offices against each other in contests to see which office could have the most "NIV starts" in each quarter.  Winners received cash prizes, expensive office lunches and outings, and recognition.  One "victory" email obtained by Relators for their branch office in Riverside, CA stated: "BAM!!!! We were 1 branch away last time and we won it this time, awesome work from everyone on our niv/nwpt growth.  We get to celebrate big now!

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

Riverside branch gets the Cup, a victory lunch, and $1500 for a team event.  How cool is this!!!!!!"

45.     Similarly, an email sent to the St. Peters, MO branch office encouraged "mining" with cash bonuses of up to $6,000 per quarter, to be awarded if the branch increased the number of new NIV "starts":  "The incentives are on the table—you have a mining contest going for an ½ day off and a gift certification—then there is the corporate Q2 [cash] bonus program—so no reason NOT to press as hard as we can to drive and grow this product line."

46.     A business-wide training powerpoint in July 2016 stated:  "NIV remains the most important initiative in the company and time is NOW!"  "Branch and Sales Rep Scoreboards are planned to help create 'competitive tension'."  "Look in the mirror and decide if you are going to [be] part of the solution to get us above 40 [NIV] starts per day nationally."

47.     NIV patients were also required to make a monthly co-pay on their devices— unless they had secondary insurance that would make the co-pay, or unless they were granted a "financial hardship" waiver by Apria.  Relator Connie Morgan has knowledge that Apria's branch manager would coach NIV patients in filling out their "financial hardship" forms in order to ensure they qualified.  This benefitted Apria because Apria knew that these patients, if required to make the co-pay, would have complained and rejected the NIV machines.  By waiving the "co-pay" requirement, Apria knew that it would avoid those patient complaints while continuing to make money by billing Medicare, Medicaid, FEHBP, TRICARE and CHAMPUS.

48.     Apria has deceived Medicare, Medicaid, FEHBP, TRICARE and CHAMPUS by knowingly submitting false claims for reimbursement for NIV rentals and purchases, for which Apria was not entitled to reimbursement (and Apria knew it was not so entitled).

17

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

49.     Apria's claims were false for one (or more) of the following reasons: the patients were non-compliant (thereby violating both the "life threatening" and the "4-hour compliance" conditions of payment); the patients' machines were only used in BiPAP or CPAP mode, not in the NIV mode; the patients' physicians orders were forged; or the patients were receiving unlawful "kickbacks" in the form of co-pay waivers.

50.     At least one DMAC has conducted audits of NIV claims submitted by DME providers under billing codes E0464 and E0466 and found error rates of 100% and 76%, respectively, for reasons including failure of "justification for medical need" because the NIV was not used to treat "life-threatening conditions where interruption of respiratory support would quickly lead to serious harm or death."   If the United States had known that Apria was submitting claims for NIV machines used by non-compliant patients; NIV machines only used in BiPAP or CPAP mode; NIV machines ordered as a result of forged prescriptions; or NIV machines associated with unlawful kickbacks, the United States would not have paid Apria's claims.   Similarly, Apria's concealment of these false practices were material to the United States' failure to require Apria to correct overpayments for NIV already received.

***Non-Compliant Patients***

51.     First, Apria collects and stores internal data that show that many of its NIV patients are and were "non-compliant" (i.e., not using the NIV machines at all, or using them for much less than the 4 hours per day required for reimbursement by CMS).   Relators believe that this is the most widespread source of false claims.   Apria's internal data comes in at least two forms:  First, machine-generated data, recorded by the machines on removable memory cards that Apria's Respiratory Therapists uploaded to Apria's internal database, and second, handwritten progress notes created by Respiratory Therapists after checking up on patients in

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

their homes.  The machine-generated data shows average daily use of as low as just 27 minutes per day.  The machine-generated data also shows the number of days on which the machines were not used at all.  Separately, the progress notes document the "hours used" of the machines since the last visit, and many documents show zero hours of use or low, single-digit hours of use, even though several months have elapsed since the last progress notes.

52.     Non-compliance indicates that the patients' condition is not so "severe and life-threatening" that "interruption or failure of respiratory support leads to death."  Non-compliance patients not only "interrupted" their "respiratory support," they did not use the NIV machine at all, often for days, weeks, even months at a time.

53.     From personal observation in their two separate branch offices, and from conversations with their colleagues, the relators know that non-compliance is extremely common. One relator was reprimanded for alerting a patient's doctor to the patient's non-compliance. (Alerting the doctor would have risked a change in prescription to a simpler machine.)

### *Switching Patients from NIV to BiPAP or CPAP*

54.     Second, Apria knowingly switched some of its patients from the "NIV" mode of therapy to the "BiPAP" mode of therapy.  Apria's NIV machines supported both kinds of therapy, but Medicare, Medicaid, FEHBP, TRICARE and CHAMPUS reimburse at a much lower rate for the simpler BiPAP type of therapy.  The BiPAP therapy was for many patients more familiar and easier to tolerate.  Apria therefore instructed its Respiratory Therapists to switch the machine's setting from "NIV" to "CPAP" or "BiPAP" mode (a type of therapy that a much cheaper machine could provide) yet continued to bill CMS at the much higher NIV rate.  One relator was reprimanded by his "marketing leader" for not switching a patient to a simpler mode in order to

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

keep the patient using the more expensive machine.  However, Apria never informed Medicare, Medicaid, or TRICARE of this switch, and continued to bill at the higher NIV rate.

### *Forgeries*

55.     Third, Apria personnel knowingly forged doctors' signatures on some doctors' prescriptions for NIV, in order to obtain authorization to switch the patients to NIV and to bill Medicare, Medicaid, or TRICARE for this item.

### *Specific Patients for Whom Apria Submitted False Claims*

56.     Apria knowingly submitted false claims for reimbursement for patients Apria knew to be non-compliant with their NIV therapy either because of non-use or because Apria had switched these patients to BiPAP mode.  For example, documents obtained by relators indicate that Apria knew the following patients, (whose NIV machines were being billed to Medicare, Medicaid, or Tricare), were non-compliant in one of these ways (the patients are identified here by their CMS Health Identification Card "HIC" number unless otherwise specified): 546621356A, 552566304A, 561536801A, 413484219A (and second insurer TRICARE 398428432); 564522467A; 425928019A (and second insurer TRICARE 427684305); 64150471 (a Missouri Medicaid number); 490384981D; 489621574A (second insurer Missouri Medicaid:  13272737); 487762074A (Missouri Medicaid second insurer:  03482502); 486528332A; 247740937A; and 01842261 (a Missouri Medicaid number).

57.     Apria also knowingly submitted false claims for the following patients, whose physician work orders had been forged by Amy Sloane, who was then Apria's Branch Office Manager for the St. Peters, Missouri Branch Office (the patients are identified here by their CMS Health Identification Card "HIC" number unless otherwise specified): 328369580A; 500566928A; 490402503A; 316362700A (second insurer Tricare, number 00317540700);

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

307482327A; 496403034A; 238043951A; WA990843 (second insurers CHAMPUS number 490380994 and CHAMPVA number 490380994); 337362590A; 493781389A (second insurer Missouri Medicaid, number 07154016); 496563885A; 492221184A (second insurer Tricare, number 492221184); 975102763; 490506223B; 498363020A (second insurer Tricare, number 463388473); 500569844A; 489782169A (second insurer Missouri Medicaid, number 63032084).

### *Apria's Fraud Harmed Patients*

58.    Switching COPD patients from their existing therapy to NIV threatened patient health in two ways:  *First,* NIV machines are more complicated and, for some patients, more uncomfortable.  Most COPD patients are old and vulnerable, are accustomed to their simpler therapy, and have struggled to adapt to the more cumbersome NIV machines.  The relators observed some patients routinely forget to plug their oxygen cylinders into their NIV machines before going to sleep at night (a critical step to getting necessary oxygen).  The relators observed other patients, who were unable to tolerate the discomfort, simply refuse to use the machine at night.

59.    *Second,* NIV machines automatically deliver a certain volume of air, unlike BiPAP and CPAP machines.  That automated volume is dangerous for patients whose lungs fill with liquid during the night.  Liquid in the lung reduces the total air volume available.  When a constant volume is blown into a reduced space, the lung may be damaged or even burst.

### COUNT ONE

(Federal False Claims Act, 31 U.S.C. § 3729 *et seq.*)

60.    This is a civil action by Relators, acting on behalf of and in the name of the United States, against the Defendants under the False Claims Act.

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

61.     Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

62.     Apria has knowingly presented or has caused to be presented false or fraudulent claims for payment by the United States, in violation of 31 U.S.C. § 3729(a)(1)(A).

63.     Apria has knowingly made or used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the United States, in violation of 31 U.S.C. § 3729(a)(1)(B).

64.     Apria has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the United States, in violation of 31 U.S.C. § 3729(a)(1)(G).

65.     Because of the Defendant's conduct set forth in this Count, the United States has suffered actual damages in the hundreds of millions of dollars, with the exact amount to be determined at trial.

66.     Relator Chris Negrete and Relator Ben Martinez were wrongfully retaliated against.  They were terminated by Apria in retaliation for bringing to Apria's attention the fraudulent conduct set forth above.  This retaliation violated 31 U.S.C. § 3730(h).

## **COUNT TWO**

(Alaska Medical Assistance False Claim and Reporting Act,
Alaska Stat. Ann. § 09.58.010 *et seq.*)

67.     Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

68.     Based on the foregoing allegations, the Defendants are liable under Alaska Stat. Ann. § 09.58.110.

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

69.     Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated Alaska Stat. Ann. § 09.58.070.

## COUNT THREE

(California False Claims Law, Cal. Gov. Code § 12650 *et seq.*)

70.     Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

71.     Based on the foregoing allegations, the Defendants are liable under Cal. Gov. Code § 12650 *et seq.*

72.     Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated Cal. Gov. Code § 12653.

## COUNT FOUR

(California Insurance Frauds Prevention Act, Cal. Ins. Code § 1871 *et seq.*)

73.     Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

74.     Based on the foregoing allegations, the Defendants are liable under Cal. Ins. Code § 1871 *et seq.*

75.     Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated Cal. Ins. Code § 1871.7(k).

## COUNT FIVE

(Colorado Medicaid False Claims Act, Col. Rev. Stat. 25.5-4-303.5 through 25.5-4-310)

76.     Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

77.    Based on the foregoing allegations, the Defendants are liable under Col.Rev.Stat.25.5-4-303.5 *et seq.*

78.    Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated Col.Rev.Stat. § 25.5-4.306(7).

## COUNT SIX

(Connecticut False Claims Act, Conn. Gen. Stat. § 4-274 *et seq.*)

79.    Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

80.    Based on the foregoing allegations, the Defendants are liable under Conn. Gen. Stat. § 4-274 *et seq.*

81.    Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated Conn. Gen. Stat. § 4-284.

## COUNT SEVEN

(Delaware False Claims & Reporting Act, 6 Del. Code §1201 *et seq.*)

82.    Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

83.    Based on the foregoing allegations, the Defendants are liable under the Delaware False Claims & Reporting Act, 6 Del. Code §1201 *et seq.*

84.    Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated 6 Del. Code § 1208(b).

## COUNT EIGHT

(District of Columbia False Claims Act, D.C. Code § 2-381.01 *et seq.*)

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

85.     Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

86.     Based on the foregoing allegations, the Defendants are liable under D.C. Code § 2-308.01 *et seq.*

87.     Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated D.C. Code § 2-381.04.

## COUNT NINE

(Florida False Claims Act, Fla. Stat. § 68.081 *et seq.*)

88.     Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

89.     Based on the foregoing allegations, the Defendants are liable under Fla. Stat. § 68.081 *et seq.*

90.     Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated Fla. Stat. § 68.088 and Fla. Stat. § 112.3187.

## COUNT TEN

(Georgia State False Medicaid Claims Act, Ga. Code Ann. § 49-4-168, *et seq.*)

91.     Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

92.     Based on the foregoing allegations, the Defendants are liable under the Georgia State False Medicaid Claims Act, Ga. Code Ann. § 49-4-168, *et seq.*

93.     Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated Georgia Code § 49-4-168.4.

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

## COUNT ELEVEN

(Hawaii False Claims Law, HRS § 661-21 *et seq.*)

94.     Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

95.     Based on the foregoing allegations, the Defendants are liable under the Hawaii False Claims Law, HRS § 661-21 *et seq.*

96.     Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated HRS § 661-30(a); § 46-180(a).

## COUNT TWELVE

(Illinois Whistleblower Reward & Protection Act, 740 ILCS 175/1 *et seq.*)

97.     Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

98.     Based on the foregoing allegations, the Defendants are liable under the Illinois Whistleblower Reward & Protection Act, 740 ILCS 175/1 *et seq.*

99.     Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated 740 ILCS 175/4(g).

## COUNT THIRTEEN

(Illinois Insurance Claims Fraud Prevention Act, 740 ILCS 92/1 *et seq.*)

100.     Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

101.     Based on the foregoing allegations, the Defendants are liable under the Illinois Insurance Claims Fraud Prevention Act, 740 ILCS 92/1 *et seq.*

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

102.    Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated 740 ILCS 92/40.

## COUNT FOURTEEN

(Indiana False Claims & Whistleblower Protection Law,
Ind. Code § 5-11-5.5.-1 *et seq.* (2005))

103.    Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

104.    Based on the foregoing allegations, the Defendants are liable under the Indiana False Claims & Whistleblower Protection Law, Ind. Code § 5-11-5.5-1 *et seq.*

105.    Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated Ind. Code § 5-11-5.5-8(a).

## COUNT FIFTEEN

(Iowa False Claims Act, Iowa Code § 685.1 *et seq.*)

106.    Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

107.    Based on the foregoing allegations, the Defendants are liable under Iowa Code § 685.1 *et seq.*

108.    Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated Iowa Code § 685.3.

## COUNT SIXTEEN

(La. R.S. 46:438.1 *et seq.* )

109.    Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

110.    Based on the foregoing allegations, the Defendants are liable under La. R.S. 46:438.1 *et seq.*

111.    Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated La. R.S. § 46:439.1(E).

### COUNT SEVENTEEN

(Maryland False Health Claims Act, Md. Code Ann. Health-Gen. § 2-601 *et seq.*)

112.    Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

113.    Based on the foregoing allegations, the Defendants are liable under the Maryland False Health Claims Act, Md. Code Ann. Health-Gen. § 2-601 *et seq.*

114.    Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated Md. Health-Gen. Code Ann. § 2-607(b)(1)

### COUNT EIGHTEEN

(Massachusetts False Claims Law, Mass. Gen. Laws Ann. ch. 12, § 5A *et seq.*)

115.    Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

116.    Based on the foregoing allegations, the Defendants are liable under Massachusetts False Claims Law, Mass. Gen. Laws Ann. ch. 12, § 5A *et seq.*

117.    Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated Mass. Gen. Laws Ann. ch. 12, § 5J.

### COUNT NINETEEN

(Michigan Medicaid False Claims Act, Mich. Comp. Laws Ann. § 400.601, *et seq.*)

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

118.    Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

119.    Based on the foregoing allegations, the Defendants are liable under the Michigan Medicaid False Claims Act, Mich. Comp. Laws Ann. § 400.601, *et seq.*

120.    Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated Mich. Code. § 400.610c(1).

## COUNT TWENTY

(Minnesota False Claims Act, Minn. Stat. § 15C.01 *et seq.*)

121.    Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

122.    Based on the foregoing allegations, the Defendants are liable under Minn. Stat. § 15C.01 *et seq.*

123.    Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated Minn. Stat. § 15C.145(a).

## COUNT TWENTY-ONE

(Montana False Claims Act, Mont. Code Ann. § 17-8-401)

124.    Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

125.    Based on the foregoing allegations, the Defendants are liable under Mont. Code Ann. § 17-8-401.

126.    Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated Mont. Code Ann. §17-8-412.

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

## COUNT TWENTY-TWO

(Nevada Submission of False Claims to State or Local Government Act,
Nev. Rev. Stat. Ann. § 357.010 *et seq.*)

127.    Relators reallege and incorporate by reference paragraphs 1 through 59 as though
fully set forth herein.

128.    Based on the foregoing allegations, the Defendants are liable under Nev. Rev. Stat.
Ann. § 357.010 *et seq.*

129.    Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez
violated Nev. Rev. Stat. Ann. § 357.250.

## COUNT TWENTY-THREE

(New Jersey False Claims Act, N.J. Stat. Ann. § 2A:32C-1)

130.    Relators reallege and incorporate by reference paragraphs 1 through 59 as though
fully set forth herein.

131.    Based on the foregoing allegations, the Defendants are liable under N.J. Stat.
Ann. § 2A:32C-1.

132.    Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez
violated N.J. Stat. § 2A:32C-10.

## COUNT TWENTY-FOUR

(New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-1 *et seq.*)

133.    Relators reallege and incorporate by reference paragraphs 1 through 59 as though
fully set forth herein.

134.    Based on the foregoing allegations, the Defendants are liable under the New
Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-1 *et seq.*

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

135.    Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated N.M. Stat. Ann. § 44-9-11 and § 27-14-12.

## COUNT TWENTY-FIVE

(New York False Claims Act, N.Y. State Fin. Law § 187 *et seq.*)

136.    Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

137.    Based on the foregoing allegations, the Defendants are liable under NY State Fin. Law, Art. 13.

138.    Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated N.Y. State Fin. Law § 191.

## COUNT TWENTY-SIX

(North Carolina False Claims Act, N.C. Gen. Stat. Ann. § 1-605 *et seq.*)

139.    Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

140.    Based on the foregoing allegations, the Defendants are liable under N.C. Gen. Stat. Ann. § 1-605 *et seq.*

141.    Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated N.C. Gen. Stat. Ann. § 1-613.

## COUNT TWENTY-SEVEN

(Oklahoma Medicaid False Claims Act, Okla. Stat. Ann. tit. 63, § 5053.1 *et seq.*)

142.    Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

143.   Based on the foregoing allegations, the Defendants are liable under Okla. Stat. Ann. tit. 63, § 5053.1 *et seq.*

144.   Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated Okla. Stat. Ann. tit. 63, § 5053.5(E).

## COUNT TWENTY-EIGHT

(Rhode Island False Claims Act, R.I. Gen. Laws § 9-1.1-1 *et seq.* )

145.   Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

146.   Based on the foregoing allegations, the Defendants are liable under R.I. Gen. Laws § 9-1.1-1 *et seq.*

147.   Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated R.I. Gen. Laws § 9-1.1-4(g).

## COUNT TWENTY-NINE

(Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq.*)

148.   Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

149.   Based on the foregoing allegations, the Defendants are liable under the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq.*

150.   Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated Tenn. Code Ann. § 4-18-105.

## COUNT THIRTY

(Texas False Claims Act, Texas Human Resources Code, § 36.001 *et seq.*)

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

151.    Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

152.    Based on the foregoing allegations, the Defendants are liable under the Texas False Claims Act, Tex. Hum. Res. Code Ann. § 36.001, *et seq.*

153.    Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated Tex. Hum. Res. Code Ann. § 36.115.

## COUNT THIRTY-ONE

(Vermont False Claims Act, Vt. Stat. Ann. tit. 32, § 630 *et seq.*)

154.    Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

155.    Based on the foregoing allegations, the Defendants are liable under the Vermont False Claims Act, Vt. Stat. Ann. tit. 32, § 630 *et seq.*

156.    Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated Vt. Stat. Ann. tit. 32, § 638.

## COUNT THIRTY-TWO

(Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1 *et seq.*)

157.    Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

158.    Based on the foregoing allegations, the Defendants are liable under Va. Code Ann. § 8.01-216.1 *et seq.*

159.    Apria's retaliation against Relator Chris Negrete and Relator Ben Martinez violated Va. Code Ann. § 8.01-216.8.

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

## COUNT THIRTY-THREE

(Washington Health Care False Claim Act, Wash. Rev. Code Ann. § 48.80.010 *et seq.*)

160.    Relators reallege and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

161.    Based on the foregoing allegations, the Defendants are liable under Wash. Rev. Code Ann. § 48.80.010 *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Relators pray for the following relief:

162.    On Counts 1 through 33, judgment for the United States or the State, as applicable, against Defendants in an amount equal to three times the damages the federal or state plaintiff government, respectively, has sustained because of the Defendants' actions, plus a civil penalty of $11,000 (or such other maximum amount as may be provided by law) for each violation;

163.    On Counts 1 through 33, an award to Relators of the maximum allowed under the federal or state law under which suit is brought by the Relators on behalf of the federal or state plaintiff, respectively;

164.    On Counts 1 through 33, awards to Relator Chris Negrete and Relator Ben Martinez for damages resulting from their retaliatory termination, including back wages multiplied by the amount allowed under the state laws, reinstatement with past and any lost seniority, and all consequential damages;

165.    Against the Defendants, attorneys' fees, expenses and costs of suit; and

166.    Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs request that this matter be tried before a jury.

*U.S. ex rel. Martinez, et al. v. Apria Healthcare Group, Inc., et al.*
CORRECTED SECOND AMENDED COMPLAINT

DATED: March 14, 2018                                     Respectfully submitted,

                                        BY: _____
                                            William Christopher Carmody
                                            (WC8478)
                                            Arun Subramanian (AS2096)
                                            Steven M. Shepard (SS4146)
                                            Geng Chen (GC2733)
                                            SUSMAN GODFREY LLP
                                            1301 Avenue of the Americas, Fl. 32
                                            New York, New York 10019
                                            Telephone: (212) 336-8330
                                            Facsimile: (212) 336-8340
                                            bcarmody@susmangodfrey.com
                                            asubramanian@susmangodfrey.com
                                            sshepard@susmangodfrey.com
                                            gchen@susmangodfrey.com

                                            Kirk Chapman (KEC 7371)
                                            Brian Krauss
                                            Troxel, Krauss & Chapman LLP
                                            55 Berry Street
                                            Brooklyn, NY 11249
                                            Telephone: 1-800-553-0710
                                            kchapman@whistleblowersinternational.com
                                            bkrauss@whistleblowersinternational.com

                                            COUNSEL FOR RELATORS