**THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA *et al.* *ex rel.* MARTINEZ *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> APRIA HEALTHCARE GROUP, INC., and APRIA HEALTHCARE LLC, <br><br> Defendants. | 17 Civ. 1059 (ER) <br><br><br> ~~[PROPOSED]~~ **STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL** |

WHEREAS, this Stipulation and Order of Settlement and Dismissal ("Stipulation") is entered into by and among plaintiff the United States of America (the "Government" or "United States"), by its attorney, Audrey Strauss, the Acting United States Attorney for the Southern District of New York, and on behalf of the Office of Inspector General for the Department of Health and Human Services ("OIG-HHS"), the Defense Health Agency ("DHA"), acting on behalf of the TRICARE program ("TRICARE"), and the Office of Personnel Management ("OPM"), acting on behalf of the Federal Employees' Health Benefit Programs ("FEHBP"); the relators Benjamin Martinez, Jr., Connie Morgan, and Chris Negrete (collectively, the "Relators"), by their authorized representatives; and defendants Apria Healthcare Group Inc. and Apria Healthcare LLC (together, "Apria" or "Defendants"; and collectively with the Government and Relators, the "Parties"), by their authorized representatives;

WHEREAS, Apria is a supplier of durable medical equipment ("DME"), including respiratory equipment such as non-invasive ventilators ("NIVs") and bi-level and constant pressure support respiratory assist devices (bi-level respiratory assist devices are herein referred to as "BiPAP"), for approximately 2 million patients across the United States;

WHEREAS, on or about February 13, 2017, Relators filed a complaint under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, as well as comparable state false claims laws against Defendants alleging, *inter alia*, that Defendants violated the FCA and state false claims laws;

WHEREAS, on or about March 18, 2018, Relators filed a corrected second amended complaint against Defendants (together with the Relators' original complaint and first amended complaint, the "Relator Complaint"), alleging that Defendants violated the FCA, the Anti-Kickback Statute (the "AKS"), 42 U.S.C. § 1320a-7b(b), and state false claims laws by billing government healthcare programs like Medicare and Medicaid for rentals of NIVs – like the Trilogy NIVs manufactured by Philips and the Astral NIVs manufactured by ResMed – that were not being used by patients, or that were being used in a therapy mode that did not qualify for the NIV billing codes, and by offering co-pay waivers as inducement to NIV patients;[1]

WHEREAS, contemporaneous with the filing of this Stipulation, the Government is filing a Notice of Election to Intervene and a Complaint-In-Intervention in the above-referenced *qui tam* action (the "US Complaint"), in which it asserts claims against Defendants under the FCA;

WHEREAS, in the US Complaint, the Government alleges that from January 1, 2014 through December 31, 2019 (the "Covered Period"), Apria violated the FCA by submitting false claims to Medicare, Medicaid, TRICARE, and FEHBP (collectively, the "Federal health programs") to seek reimbursement for NIV rentals (*i*) when the NIVs were not medically necessary or reasonable due to the lack of continued use or continued need by the beneficiaries; (*ii*) when certain Astral NIVs, which were only to be used in a bi-level pressure support setting called Pressure Assist Control mode ("PAC mode"), were not medically necessary or reasonable; or (*iii*)

---

[1]    Relators also asserted retaliation claims and claims for statutory fees and costs, which are not subject to this Stipulation.

where Apria induced Medicare and TRICARE beneficiaries to rent, or healthcare providers to prescribe, the NIVs by waiving the required coinsurance payments ("co-pays") without individualized determinations of financial need in violation of the AKS.  The conduct described in this Paragraph is the "Covered Conduct" for purposes of this Stipulation;

WHEREAS, Defendants plan to enter into separate settlement agreements with various States (the "State Settlements") – including all the States named as co-plaintiffs in the Relator Complaint – to resolve claims under state false claims laws for the Covered Conduct, and have agreed to pay a total of $2,367,210.21 pursuant to the State Settlements;[2] and

WHEREAS, the Parties have, through this Stipulation, reached a mutually agreeable settlement resolving the claims asserted against Defendants for the Covered Conduct in the US Complaint and the claims asserted in the Relator Complaint other than the Relators' retaliation claims and claims for statutory fees and costs;

NOW, THEREFORE, upon the Parties' agreement, IT IS HEREBY ORDERED that:

## TERMS AND CONDITIONS

1.      The Parties agree that this Court has subject matter jurisdiction over this action and consent to this Court's exercise of personal jurisdiction over each of them.

2.      Defendants admit, acknowledge and accept responsibility for the following conduct:

      a.      Apria is a DME supplier and operates approximately 300 branch locations throughout the United States.

      b.      In early 2014, Apria selected growing the NIV rental business as one of its key business priorities.  Specifically, Apria's internal analysis indicated that NIV rentals would be profitable because of, among other things, the expected Medicare reimbursement rate of approximately $1,400 per month.

---

[2]      Defendants also have agreed in principle with the California Department of Insurance to pay $500,000 to resolve claims asserted by the Relators under the California Insurance Frauds Prevention Act, Cal. Ins. Code § 1871 *et seq*.  *See* Relator Complaint ¶¶ 73-74.

c.   During the Covered Period, and through many of its branch locations, Apria leased NIVs to a substantial number of patients covered by the Federal health programs pursuant to prescriptions written by physicians and submitted claims to those programs to obtain reimbursements for those NIV rentals.

d.   Federal health programs maintain billing requirements for DME rental items like NIVs.  During the Covered Period, those requirements provided, as applicable here, that NIV rentals must be reasonable and medically necessary and that DME suppliers must not offer co-pay waivers where one purpose of the waiver offer was to induce NIV orders or referrals.

e.   During the Covered Period, Apria understood that the claims submitted to the Federal health programs seeking reimbursement for NIV rentals must comply with the applicable billing requirements.

   NIV Continued Use Conduct

f.   During the Covered Period, Apria maintained internal guidelines on Medicare's billing rules called "Reimbursement Updates."  As relevant here, Reimbursement Update 470, which was issued in 2013 and remained in effect until 2017, stated that "Apria is responsible for monitoring the utilization of DME[] rental items and supplies" and that "Medicare requires that providers discontinue billing when rental items [] are no longer being used by the beneficiary."

g.   Starting in or about August 2014, Apria implemented a series of marketing programs to encourage physicians to order NIVs for their patients.  As part of these programs, Apria trained its sales staff to explain that NIVs could yield significant clinical benefits to patients.

h.   Apria knew that patients need to use their NIVs to receive the benefits of NIV therapy.  During the Covered Period, while Medicare recognized several means for DME suppliers to monitor patients' usage of NIVs and similar devices, Apria relied on the respiratory therapists ("RTs") in its branches to monitor patients' usage of their NIV devices.  Further, Apria's NIV promotional materials indicated that Apria's RTs would regularly visit NIV patients to assess whether they used their NIV devices in accordance with their physicians' instructions.

i.   The RTs at Apria's branches, however, often did not conduct regular visits to NIV patients to confirm that patients were using their NIVs as directed by their physicians.

j.   A January 2017 internal analysis, for example, found that in December 2016, Apria's RTs failed to complete more than half of the visits to NIV patients mandated by Apria's NIV clinical procedures at all three of Apria's operational zones.  Later that year, an Apria executive informed a member of Apria's executive leadership that the NIV clinical team believed that a meaningful proportion of the RT home visits that need to be done as part of Apria's baseline clinical policy are not being done.

k.   Apria continued to seek payments from the Federal health programs for NIV rentals each month even though its RTs frequently failed to conduct in-home visits to verify that patients were still using their NIVs.

l.   In addition, when it had information from the RT visits indicating that patients had stopped using their NIVs, Apria often did not take steps to stop seeking payments from Federal health programs or to determine if the NIV rentals were still medically necessary.

m.   In June 2017, Apria promulgated an internal policy that, for the first time, directed RTs to take a series of steps — including potentially to "cease billing and begin the discharge process" — if they encountered "no device usage" patients.  Due to inconsistent training, however, a number of Apria's branches did not meaningfully implement this policy and failed to consistently "cease billing" for NIVs that were no longer being used by patients.

PAC Mode Conduct

n.   Throughout the Covered Period, Apria offered a type of rental respiratory assist device – the VPAP S9 (the "VPAP RAD") – that provided, among other therapy settings, a bi-level pressure support setting called PAC mode.

o.   PAC mode was also a therapy setting available on the Astral NIV offered by Apria, which cost significantly more to rent than the VPAP RAD.

p.   In 2015, Apria encouraged Apria's sales staff to actively urge physicians to order the Astral NIVs in the PAC mode setting.  When they urged physicians to order the Astral NIVs in PAC mode, Apria's salespeople frequently did not tell the physicians that PAC mode therapy was also available through the VPAP RAD at a lower monthly cost.

q.   On a number of occasions, this resulted in Apria renting the more expensive Astral NIVs to patients with the PAC mode therapy orders, including patients covered by Federal health programs, even though the less expensive VPAP RADs may have met those patients' medical needs.  Specifically, while the Astral NIV had several features that were not available on the VPAP RAD, the Astral orders in question typically did not prescribe that patients use such features.

Co-Pay Waiver Conduct

r.   During the Covered Period, Apria offered co-pay waivers to certain patients, including NIV patients with Medicare and TRICARE coverage.

s.   Managers at a number of Apria's branches directed salespeople at those branches to routinely discuss the availability of co-pay waivers with NIV patients, including before the patients raised concerns about their ability to make these payments.  In a number of cases, those managers also authorized salespeople to offer co-pay waivers to persuade patients to rent NIVs from Apria instead of other DME suppliers.  Further, when Apria learned that patients wished to cancel NIV

5

rentals, Apria managers often had salespeople discuss the possibility that Apria would waive future co-pays to convince patients to keep their NIV rentals.

t.    In December 2014 and February 2015, Apria made a series of changes to its co-pay waiver policy. As a result of those changes, Apria expected that co-pay waivers would be offered mainly to patients who rented NIVs from Apria, instead of patients who were renting less expensive rental items.

u.    During the Covered Period, Apria gave full co-pay waivers to hundreds of NIV patients without making an assessment as to whether those patients could have afforded some portion of their co-pay responsibilities.

*        *        *

v.    As a result of the conduct described in paragraphs 2.a through 2.u, Apria received reimbursements from the Federal health programs for some NIV rental claims that did not comply with all of those programs' billing rules and guidance.

3.    Defendants shall pay to the Government within fifteen (15) business days of the Effective Date (defined below in Paragraph 31) the sum of $37,632,789.89, plus interest which shall be compounded annually at a rate of 1.25% accruing from September 24, 2020, to the date of the payment (the "Federal Settlement Amount") in accordance with instructions to be provided by the Financial Litigation Unit of the United States Attorney's Office for the Southern District of New York. Of the Federal Settlement Amount, $18,816,394.45, plus applicable interest, constitutes restitution to the United States.

4.    Defendants agree to cooperate fully and truthfully with the Government's investigation of entities and individuals not released in this Stipulation. Upon reasonable notice, Defendants shall encourage, and agree not to impair, the cooperation of their directors, officers, and employees, and shall use their best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Defendants further agree to furnish to the Government, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in their possession, custody, or control concerning any

investigation of the Covered Conduct that they have undertaken, or that has been performed on their behalf by another.

5.      Subject to the exceptions in Paragraphs 9 and 18 below (concerning excluded claims and bankruptcy proceedings), and conditioned upon Defendants' full compliance with the terms of this Stipulation, including full payment of the Federal Settlement Amount to the Government pursuant to Paragraph 3 above, the Government releases Defendants, including their subsidiaries and corporate predecessors,[3] successors and assigns, and, only to the extent they were involved with Defendants' business operations, Defendants' parent companies from any civil or administrative monetary claim that the Government has for the Covered Conduct under the FCA, the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a, the Program Fraud Civil Remedies Act, 31 U.S.C. § 3801-3812, and the common law theories of fraud, payment by mistake, and unjust enrichment.  For avoidance of doubt, this Stipulation does not release any current or former officer, director, employee, or agent of Defendants from liability of any kind.

6.      Defendants fully and finally release the Government, its agencies, officers, employees, servants, and agents from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the Government, its agencies, officers, employees, servants, or agents related to the Covered Conduct and the Government's investigation, prosecution and settlement thereof.

7.      In consideration of Defendants' obligations in this Stipulation and the Corporate Integrity Agreement ("CIA") entered into between OIG-HHS and Defendants, and conditioned upon Defendants' full payment of the Federal Settlement Amount, and except as expressly

---

[3]     For purpose of this paragraph, Defendants' corporate predecessors include limited liability companies as well as corporations.

reserved in this Paragraph and Paragraph 9 (concerning excluded claims), OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against Defendants under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud and other prohibited activities) for the Covered Conduct.  OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude Defendants from Medicare, Medicaid and other Federal health care programs based upon the Covered Conduct.  Nothing in this Paragraph precludes OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 9 below.

8.      In consideration of Defendants' obligations in this Stipulation, and conditioned upon Defendants' full payment of the Federal Settlement Amount, and except as expressly reserved in this Paragraph and Paragraph 9 (concerning excluded claims), DHA agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking Defendants' exclusion from TRICARE under 32 C.F.R. § 199.9 for the Covered Conduct.  DHA expressly reserves authority to exclude Defendants from TRICARE under 32 C.F.R. § 199.9(f)(1)(i)(A), (f)(1)(i)(B), and (f)(1)(iii) (mandatory exclusion) based upon the Covered Conduct.  Nothing in this Paragraph precludes DHA or TRICARE from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 9 below.

9.      Notwithstanding the releases given in Paragraph 5 above, or any other term of this Stipulation, the following claims of the Government are specifically reserved and are not released by this Stipulation:

a.  any liability arising under Title 26, United States Code (Internal Revenue Code);

b.  any criminal liability;

c.  except as explicitly stated in this Stipulation, any administrative liability, including mandatory exclusion from any Federal health care program;

d.  any liability to the Government (or its agencies) for any conduct other than the Covered Conduct;

e.  any liability based upon obligations created by this Stipulation; and

f.  any liability of individuals.

10.    Conditioned on timely payment by Defendants of the full Federal Settlement Amount pursuant to Paragraph 3 above, the Relators, for themselves and their heirs, successors, attorneys, agents, and assigns, release Defendants and Defendants' subsidiaries and corporate predecessors,[4] successors, assigns, and parents, as well as all of Defendants' current and former officers, directors, employees, attorneys, and other agents, from any and all manner of claims, proceedings, liens, and causes of action of any kind, description, or nature whatsoever, whether known or unknown, fixed or contingent, in law or in equity, in contract or in tort, under any federal or state statute or regulation, or in common law, that the Relators, their heirs, successors, attorneys, agents, or assigns have against Defendants, including, but not limited to, any liability arising from (i) the alleged Covered Conduct, (ii) any conduct investigated by the Government, including any conduct found by the Government and communicated to Defendants, and (iii) any claims that Relators asserted or could have asserted against the Defendants including, but not limited to, the claims known or unknown, asserted or unasserted in the Relator Complaint since the beginning of time; provided, however, that nothing in this Stipulation shall preclude Relators from: (x) seeking

---

[4]    For purpose of this paragraph, Defendants' corporate predecessors include limited liability companies as well as corporations.

to recover reasonable expenses and attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d) and analogous provisions of state law; (y) seeking relief for their retaliation claims pursuant to 31 U.S.C. § 3730(h) and analogous provisions of state law; and (z) pursuing their claims for private insurance fraud, under the California Insurance Fraud Prevention Act (CIFPA) and the Illinois Insurance Claims Fraud Prevention Act.  (Notwithstanding the foregoing, as referenced in footnote 2,  Relators and Defendants have agreed to settle the CIFPA claims, which agreement and release shall be memorialized in a separate document.)  In connection with this release, Relators hereby waive all rights or benefits which they have or in the future may have under Section 1542 of the Civil Code of California, which reads as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT,  IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFECTED HIS OR HER SETTLEMENT WITH DEBTOR OR RELEASED PARTY."

11.    Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Stipulation; Relators further agree and affirm that the terms of this Stipulation are fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).

12.    In consideration of the execution of this Stipulation by the Relators and the Relators' release as set forth in Paragraph 10 above, Defendants, including their subsidiaries, predecessors, and corporate successors and assigns, as well as all of their current and former officers, directors, employees, attorneys, and other agents, release the Relators and their successors, heirs, assigns, attorneys, and other agents, from any and all manner of claims, proceedings, liens, and causes of action of any kind or description that Defendants have against Relators related to or arising from the Relator Complaint.

13.     Defendants shall be in default of this Stipulation if Defendants fail to make the required payment set forth in Paragraph 3 above on or before the due date for such payment, or if they fail to comply materially with any other term of this Stipulation that applies to them ("Default").  The Government shall provide written notice to Defendants of any Default in the manner set forth in Paragraph 30 below.  Defendants shall then have an opportunity to cure the Default within ten (10) business days from the date of delivery of the notice of Default.  In the event that a Default is not fully cured within ten (10) business days of the delivery of the notice of Default ("Uncured Default"), interest shall accrue at the rate of 12% per annum compounded daily on the remaining unpaid principal balance of the Federal Settlement Amount (less any amounts previously paid toward the Federal Settlement Amount by Defendants), beginning ten (10) calendar days after mailing of the notice of Default.  In the event of an Uncured Default, Defendants shall agree to the entry of a consent judgment in favor of the Government against Defendants in the amount of the Federal Settlement Amount as attached hereto as Exhibit A.  The Government may also, at its option, (a) rescind this Stipulation and reinstate the claims asserted against Defendants in the US Complaint; (b) seek specific performance of this Stipulation; (c) offset the remaining unpaid balance of the Federal Settlement Amount from any amounts due and owing Defendants by any department, agency, or agent of the United States; or (d) exercise any other rights granted by law, or under the terms of this Stipulation, or recognizable at common law or in equity.  Defendants shall not contest any offset imposed or any collection undertaken by the Government pursuant to this Paragraph, either administratively or in any Federal or State court. In addition, Defendants shall pay the Government all reasonable costs of collection and enforcement under this Paragraph, including attorneys' fees and expenses.  In the event that the Government opts to rescind this Stipulation pursuant to this Paragraph, Defendants shall not plead,

argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that relate to the Covered Conduct.

14.     Defendants, having truthfully admitted to the conduct set forth in paragraph 2 hereof (the "Admitted Conduct"), agree that they shall not, through their attorneys, agents, officers, or employees, make any public statement, including but not limited to, any statement in a press release, social media forum, or website, that contradicts or is inconsistent with the Admitted Conduct or suggests that the Admitted Conduct is not wrongful (a "Contradictory Statement"). Any Contradictory Statement by Defendants, their attorneys, agents, officers, or employees, shall constitute a violation of this Stipulation, thereby authorizing the Government to pursue any of the remedies set forth in Paragraph 13 of this Stipulation, or seek other appropriate relief from the Court.   Before pursuing any remedy, the Government shall notify Defendants that it has determined that Defendants have made a Contradictory Statement.   Upon receiving notice from the Government, Defendants may cure the violation by repudiating the Contradictory Statement in a press release or other public statement within four business days.   If Defendants learn of a potential Contradictory Statement by its attorneys, agents, officers, or employees, Defendants must notify the Government of the statement within 24 hours.   The decision as to whether any statement constitutes a Contradictory Statement or will be imputed to Defendants for the purpose of this Stipulation, or whether Defendants adequately repudiated a Contradictory Statement to cure a violation of this Stipulation, shall be within the sole discretion of the Government.   Consistent with this provision, Defendants may raise defenses and/or assert affirmative claims or defenses in any proceeding  brought by private and/or public  parties, so long as  doing so would not contradict or be inconsistent with the Admitted conduct.

15.     Defendants agree that they waive and shall not seek payment for any of the health care billings covered by this Stipulation from any  health  care  beneficiaries  or  their  parents,

sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

16.     Defendants waive and shall not assert any defenses they may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Stipulation bars a remedy sought in such criminal prosecution or administrative action.

17.     Defendants represent and warrant that they have reviewed their financial situation, that they are currently not insolvent as such term is defined in 11 U.S.C. § 101(32), and that they reasonably believe that they shall remain solvent following payment of the Federal Settlement Amount to the Government.  Further, the Parties warrant that, in evaluating whether to execute this Stipulation, they (a) have intended that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Defendants, within the meaning of 11 U.S.C. § 547(c)(1); and (b) have concluded that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.  Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Defendants were or became indebted to on or after the date of this Stipulation, within the meaning of 11 U.S.C. § 548(a)(1).

18.     If within ninety-one (91) days of the Effective Date of this Stipulation or any payment made under this Stipulation, Defendants commence any case, action, or other proceeding under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors or a third party commences any case, action, or other proceeding under any law related to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking an order for relief of Defendants' debts,

or seeking to adjudicate Defendants as bankrupt or insolvent; or (b) seeking appointment of a

receiver, trustee, custodian, or other similar official for Defendants or for all or part of Defendants'

assets, Defendants agree as follows:

     a.  Defendants' obligations under this Stipulation may not be avoided pursuant to 11 U.S.C. § 547, and Defendants shall not argue or otherwise take the position in any such case, action, or proceeding that (i) Defendants' obligations under this Stipulation may be avoided under 11 U.S.C. § 547; (ii) Defendants were insolvent at the time this Stipulation was entered into; or (iii) the mutual promises, covenants, and obligations set forth in this Stipulation do not constitute a contemporaneous exchange for new value given to Defendants.

     b.  If any of Defendants' obligations under this Stipulation are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the Government, at its option, may rescind the release in this Stipulation and bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by the release in Paragraph 6 above. Defendants agree that (i) any such claim, action, or proceeding brought by the Government would not be subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the case, action, or proceeding described in the first sentence of this Paragraph, and Defendants shall not argue or otherwise contend that the Government's claim, action, or proceeding is subject to an automatic stay; (ii) Defendants shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any claim, action, or proceeding that is brought by the Government within sixty (60) calendar days of written notification to Defendants that the release has been rescinded pursuant to this Paragraph, except to the extent such defenses were available on February 13, 2017; and (iii) the Government has an undisputed, non-contingent, and liquidated allowed claim against Defendants in the amount of the Federal Settlement Amount set forth in Paragraph 2 above and the Government may pursue its claim in the case, action, or proceeding described in the first sentence of this Paragraph, as well as in any other case,

action, or proceeding, and shall be allowed to offset the remaining unpaid balance of its claim from any amounts due and owing Defendants by any department, agency, or agent of the United States without seeking further authorization from any court under 11 U.S.C. § 362(a)(7).

c. Defendants acknowledge that the agreements in this Paragraph are provided in exchange for valuable consideration provided in this Stipulation.

19. The Federal Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (*e.g.*, Medicare Administrative Contractor, fiscal intermediary, carrier), any TRICARE or FEHBP carrier, or any state payer, related to the Covered Conduct; and Defendant agrees not to resubmit to any Medicare contractor, any TRICARE or FEHBP carrier, or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

20. Defendants agree to the following:

a. Unallowable Costs Defined:  All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendants, including their present or former officers, directors, employees, and agents in connection with:

(1) the matters covered by this Stipulation;

(2) the Government's audit(s) and civil investigation(s) of matters covered by this Stipulation;

(3) Defendants' investigation, defense, and corrective actions undertaken in response to the Government's audit(s) and civil investigation(s) in connection with matters covered by this Stipulation (including attorneys' fees);

15

(4) the negotiation and performance of this Stipulation; and

(5) any payment Defendant makes to the Government pursuant to this Stipulation and any payment Defendant may make to the Relators, including expenses, costs and attorneys' fees; and

(6) the negotiation of, and obligations undertaken pursuant to the CIA to:  (i) retain an independent review organization to perform annual reviews as described in Section III of the CIA; and (ii) prepare and submit reports to the OIG-HHS.

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and FEHBP (hereinafter referred to as "Unallowable Costs").  However, nothing in Paragraph 20(a)(6) that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that are not allowed based on any other authority applicable to Defendants.

b.  Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Defendants or any of their subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP programs.

c.  Treatment of Unallowable Costs Previously Submitted for Payment: Defendants further agree that within ninety (90) days of the Effective Date of this Stipulation, Defendants shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and to Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought by Defendants from the United States or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendants or any of their subsidiaries or affiliates, and

shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs.  Defendants agree that the Government, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.  Any payments due after the adjustments have been made shall be paid to the Government pursuant to the direction of the Department of Justice and/or the affected agencies.  The Government, including the Department of Justice and/or the affected agencies, reserves its right to audit, examine, or re-examine Defendants' books and records and to disagree with any calculation submitted by Defendants or any of their subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Defendants, or the effect of any such Unallowable Costs on the amounts of such payments

d.   Nothing in this Stipulation shall constitute a waiver of the rights of the Government to audit, examine, or re-examine Defendants' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

21.    This Stipulation is intended to be for the benefit of the Parties only.  The Parties do not release any claims against any other person or entity except as otherwise provided herein.

22.    Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Stipulation; provided, however, nothing in this Stipulation shall preclude Relators from seeking to recover their expenses or attorneys' fees and costs from Defendants, pursuant to 31 U.S.C. § 3730(d).

23.    Any failure by the Government to insist upon the full or material performance of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions

hereof, and the Government, notwithstanding that failure, shall have the right thereafter to insist upon the full or material performance of any and all of the provisions of this Stipulation.

24.     This Stipulation is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Stipulation is the United States District Court for the Southern District of New York.  For purposes of construing this Stipulation, this Stipulation shall be deemed to have been drafted by all Parties to this Stipulation and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

25.     This Stipulation constitutes the complete agreement between the Parties with respect to the subject matter hereof.  This Stipulation may not be amended except by written consent of the Parties.

26.     The undersigned counsel and other signatories represent and warrant that they are fully authorized to execute this Stipulation on behalf of the persons and the entities indicated below.

27.     This Stipulation is binding on Defendants' successor entities.

28.     This Stipulation is binding on Relators' successors, transferees, heirs, and assigns.

29.     This Stipulation may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Stipulation.  E-mails that attach signatures in PDF form or facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Stipulation.

30.     Any notice pursuant to this Stipulation shall be in writing and shall, unless expressly provided otherwise herein, be delivered by hand, express courier, or e-mail transmission followed by postage-prepaid mail, and shall be addressed as follows:

TO THE UNITED STATES:

Li Yu and Steven J. Kochevar
Assistant United States Attorneys

86 Chambers Street, Third Floor
New York, New York 10007
li.yu@usdoj.gov
steven.kochevar@usdoj.gov


TO DEFENDANTS:

Sara L. Shudofsky
Arnold & Porter
250 West 55th Street
New York, NY  10019
sara.shudofsky@arnoldporter.com

Robert Fabrikant and Joshua Drian
Manatt, Phelps, & Phillips LLP
1050 Connecticut Avenue, NW, Suite 600
Washington, DC  20036
RFabrikant@manatt.com
JDrian@manatt.com


TO RELATORS:

Arun Subramanian and Steven Shepard
Susman Godfrey LLP
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
asubramanian@susmangodfrey.com
sshepard@susmangodfrey.com

31.     The effective date of this Stipulation is the date upon which it is approved by the Court (the "Effective Date").


Agreed to by:

**THE UNITED STATES**

Dated: New York, New York
        *December 15*, 2020

                          AUDREY STRAUSS
                          Acting United States Attorney for the
                          Southern District of New York

                    By:   _____

                          LI YU
                          STEVEN J. KOCHEVAR
                          Assistant United States Attorneys
                          86 Chambers Street, Third Floor
                          New York, New York 10007
                          Tel.:   (212) 637-2734/2715
                          *Attorneys for the Government*

Dated: *December 14*, 2020

                          Office of the Inspector General, the U.S.
                          Department of Health and Human Services

                    By:   _____

                          LISA M. RE
                          Assistant Inspector General for Legal Affairs

**THE DEFENDANTS**

Dated:  December 14, 2020

APRIA HEALTHCARE GROUP INC.

By:_____

Raoul Smyth
Executive Vice President, General Counsel


APRIA HEALTHCARE LLC

By:_____

Raoul Smyth
Executive Vice President, General Counsel

*Defendants*


ARNOLD & PORTER KAYE SCHOLER LLP

By:_____

Sara L. Shudofsky
250 West 55th Street
New York, NY  10019


MANATT, PHELPS & PHILLIPS LLP

By:_____

Robert Fabrikant
1050 Connecticut Avenue, NW, Suite 600
Washington, DC  20036


*Attorneys for the Defendants*



**THE RELATORS**

Dated: _____ ___, 2020

By: _____
BENJAMIN MARTINEZ, Jr.
*Relator*

Dated: December 12, 2020

By: _____
CONNIE MORGAN
*Relator*

Dated: _____ ___, 2020

By: _____
CHRIS NEGRETE
*Relator*

Dated: New York, New York
_____ ___, 2020

SUSMAN GODFREY LLP

By: _____
[_____]
1301 Avenue of the Americas, Fl. 32
New York, NY 10019

*Attorneys for the Relators*

**SO ORDERED**:

_____
HON. **EDGARDO RAMOS**
UNITED STATES DISTRICT JUDGE

Dated: _____, 2020

Dated: _____ ___, 2020

APRIA HEALTHCARE GROUP INC.

By:
[_____]

APRIA HEALTHCARE LLC

By:
[_____]

*Defendants*

ARNOLD & PORTER KAYE SCHOLER LLP

By:
[_____]

MANATT, PHELPS & PHILLIPS LLP

By:
[_____]

*Attorneys for the Defendants*

**THE RELATORS**

Dated: *12-12*_____ ___, 2020

By:

BENJAMIN MARTINEZ, Jr.
*Relator*

Dated: _____ ___, 2020

By:

CONNIE MORGAN
*Relator*

Dated: _____ ___, 2020

By:

**THE RELATORS**

Dated: _____, 2020

By: _____
   BENJAMIN MARTINEZ, Jr.
   *Relator*

Dated: _____, 2020

By: _____
   CONNIE MORGAN
   *Relator*

Dated: Dec 12, 2020

By: _____
   CHRIS NEGRETE
   *Relator*

Dated: New York, New York
   _____, 2020

SUSMAN GODFREY LLP

By: _____
   [_____]
   1301 Avenue of the Americas, Fl. 32
   New York, NY 10019

   *Attorneys for the Relators*

**SO ORDERED:**

_____
HON. EDGARDO RAMOS
UNITED STATES DISTRICT JUDGE

Dated: _____, 2020

**THE RELATORS**

Dated: _____ ___, 2020

By: _____

BENJAMIN MARTINEZ, Jr.
*Relator*

Dated: _____ ___, 2020

By: _____

CONNIE MORGAN
*Relator*

Dated: _____ ___, 2020

By: _____

CHRIS NEGRETE
*Relator*

Dated: New York, New York
_____ ___, 2020

SUSMAN GODFREY LLP

By: _____

[  Steven M. Shepard, Partner    ]
1301 Avenue of the Americas, Fl. 32
New York, NY 10019

*Attorneys for the Relators*


**SO ORDERED**:

_____
Edgardo Ramos, U.S.D.J
Dated:   12/18/2020
New York, New York